Jeffrey I. Carton (JC-8296)
Robert J. Berg (RB-8542)
Myles K. Bartley (MB-4831)
DENLEA & CARTON LLP
2 Westchester Park Drive, Suite 410
White Plains, NY 10604
(914) 331-0100
jcarton@denleacarton.com
rberg@denleacarton.com
mbartley@denleacarton.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------
BRITTANY PEPPER, on behalf of herself
and all others similarly situated,

      Plaintiff,

      v.

BOULDER BRANDS, INC.,

      Defendant.
------------------------------------------------------------

CIVIL ACTION NO. 7:16-cv-06512

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff Brittany Pepper, by and through her counsel, Denlea & Carton LLP, respectfully files this Class Action Complaint on behalf of herself and a class of similarly-situated individuals who have purchased Smart Balance® Low Sodium, and Smart Balance® made with Extra Virgin Olive Oil products from the Defendant.

**NATURE OF CASE**

1. This action seeks to redress Defendant Boulder Brands, Inc.'s ("Boulder" or "Defendant") unfair and deceptive sales practices concerning the sale of its Low Sodium and Extra Virgin Olive Oil ("EVOO") Smart Balance® buttery spreads which are sold as an alternative to its Smart Balance Original buttery spread; specifically, the fact

that Defendant is under filling the amount of Low Sodium and EVOO spreads contained in its iconic square tubs, in a sneaky and clandestine attempt to boost its revenue and charge consumers a premium for these so-called "healthier" alternatives.  Boulder's deception occurs by selling each of the Original, Low Sodium, and EVOO spreads in identical, distinctive square tubs, and at the same price.  Unfortunately for unsuspecting consumers, however, while the distinctive, square tubs of the Original spread contain 15 oz. of product, the same distinctive, square tubs of its Low Sodium and EVOO spreads contain only 13 oz.  As a result, consumers are being deceived into paying more for, and getting less of, the Low Sodium and EVOO buttery spreads than the identically priced and similarly packaged Original spread.

## PARTIES

2. Plaintiff Brittany Pepper is a natural person of full age of majority who is domiciled and resides in Stormville, New York.  Plaintiff has purchased a variety of Smart Balance® products, including Smart Balance® Original, Smart Balance® Low Sodium, and Smart Balance® made with Extra Virgin Olive Oil products within the Class period.  Plaintiff made these purchases at the ShopRite store located in Carmel, New York.

3. Defendant Boulder Brands, Inc. ("Boulder" or "Defendant") is a wholly owned subsidiary of Pinnacle Foods Inc. ("Pinnacle").  Boulder has a registered office at 1209 Orange Street, Wilmington, Delaware 19801, and maintains its principal executive office at 1600 Pearl Street, Suite 300, Boulder, Colorado 80302.  Boulder touts itself as "one of the largest natural consumer packaged food companies in the United States with annual revenues of more than $500 million."  Boulder's self-professed "principles"

include: "humility, accountability, collaboration, tenacity, wellness and *transparency*." (Boulder's 2014 10K at 3 (emphasis added).) Boulder's website defines "Transparency" as Boulder's "support [of] an environment of trust and integrity, and act[ing] with honesty in all that we do." (http://www.boulderbrands.com/our-purpose/) Notwithstanding its supposed claim of transparency to the contrary, Boulder is deceiving consumers concerning the amount of Low Sodium and EVOO spreads contained in its distinctive, square tubs.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d). Jurisdiction is proper because (1) the matter in controversy exceeds the sum or value of $5,000,000.00, exclusive of interest and costs, and (2) the named Plaintiff and the Defendant are citizens of different states. 28 U.S.C. §1332(d)(2)(A). The Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), as the parties are diverse and the amount in controversy exceeds the requisite threshold.

5. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events giving rise to the claim occurred within this judicial district and because Defendant has marketed and sold the products at issue in this action within this judicial district and has done business within this judicial district.

## GENERAL ALLEGATIONS

6. Boulder contends that it is "a leader in the natural foods industry and is committed to creating food solutions that give people opportunities to improve their lives, one product at a time."

7. Defendant's "health and wellness platform" consists of a variety of brands that "target specific health trends: the Glutino® and Udi's® Gluten Free brands for gluten free diets; the Earth Balance® brand for plant-based diets; the Level Life™ brand for diabetic diets; EVOL® branded foods for consumers seeking convenient foods made with pure and simple ingredients; and the Smart Balance® brand for heart healthier diets."

8. Defendant's products are sold in all major retail channels, including natural, grocery, club and mass merchandise outlets.

9. In 1997, "Smart Balance" buttery spreads were introduced to the market, purportedly as the "first mainstream buttery spread with 0g trans fat naturally." Over the ensuing two decades, Smart Balance has achieved significant market share and has become a mainstay of many consumers' diets.

10. In May 2013, Smart Balance also became the first in its industry to change its packaging from "round to square space-saving tubs . . . to free up refrigerated shelf and warehouse space."

11. In making this change to the square tubs, however, Defendant pointedly and emphatically reassured consumers that its new packaging was "<u>Still</u> 15 oz." (emphasis added).



Boulder Brands timeline, http://www.boulderbrands.com/about-us/timeline/ (last visited, Aug. 3, 2016).

12. Indeed, to this day, Defendant has continued to market and sell its Smart Balance® Original products in these same opaque, square tubs, with each tub filled with 15 ounces (net weight) of buttery spread, a fact confirmed by pictures of these products on Defendant's own website:



5

Smart Balance website, http://www.smartbalance.com/products/buttery-spread/smart-balance-original (last visited Aug. 3, 2016).

13. In contrast to the contents of its Smart Balance® Original spread, however, Defendant surreptitiously reduced the volume of spread it packages in its Low Sodium and EVOO tubs, despite maintaining the same distinctive, square packaging Defendant uses for its Smart Balance® Original spread and despite selling all three products at the same price.



Smart Balance home page, http://www.smartbalance.com/ (last visited, Aug. 3, 2016).

14. For its Low Sodium and EVOO products, Defendant reduced the amount of spread in each tub from 15 oz. (net weight) to 13 oz. (net weight).

15. Unlike its actions when Defendant altered its packaging from round tubs to square tubs, Defendant neither made any announcement that it was reducing the volume of buttery spread contained in its tubs of Low Sodium and EVOO products, nor did it highlight this change on its packaging (*e.g.*, "Now 13 oz.!").

16. As a consequence, consumers are being misled into believing that they are buying more of Defendant's Low Sodium and EVOO spreads than is actually

6

contained in the tubs. And more significantly, consumers are unwittingly paying substantially more per ounce for these alternatives, allowing Defendant to collect a premium that it is otherwise failing to disclose to consumers.

17. For example, ShopRite is selling Smart Balance® Original spread in Defendant's distinctive square tubs, net weight 15 ounces, for $2.99 – which translates to approximately 20 cents per ounce. At the same time, ShopRite is selling both Low Sodium and EVOO spreads in the same-dimension distinctive, opaque, square tubs as the Smart Balance® Original spread, and for the same price, $2.99. But the Low Sodium and EVOO tubs each contain only 13 ounces of buttery spread (net weight). The Low Sodium and EVOO products per ounce price is approximately 23 cents – 15 percent higher than the Smart Balance® Original products. Yet consumers, seeing each of the three Smart Balance tubs on the grocery store shelf alongside one another, are easily misled into believing that they are buying the same volume of buttery spread regardless of which tub they purchase.

18. Indeed, if consumers researched the contents of these alternative buttery spreads on Defendant's own website, they would be similarly deceived, as Defendant's website contains a picture of its Low Sodium product, in its distinctive square tub, and indicating that it contains 15 oz. of spread (net weight).



Smart Balance Low Sodium product page,

http://www.smartbalance.com/products/buttery-spread/smart-balance-whipped-low-sodium-buttery-spread (last visited, Aug. 3, 2016).

19. Unless consumers carefully study the net weight number set forth in small print on the front of the tub – and somehow realize that they are no longer receiving the same quantity of Smart Balance buttery spread as before – consumers are being misled. Defendant's practice of under filling its Low Sodium and EVOO spreads deceives consumers into paying a price premium for these alternatives. Rather than provide consumers with the same 15 ounces of product and charge a higher price for the Low Sodium and EVOO alternatives, Defendant is deceptively keeping the price the same, and reducing the contents of the tub. The net result is that Defendant is able to collect the premium it desires by deceiving consumers who reach for the same size tub they are accustomed to purchasing.

20. As a result of Defendant's misleading and deceptive use of Smart Balance's traditional-sized, non-transparent, distinctive tub, and substantially under

filling them with Low Sodium and EVOO spreads, Plaintiff and consumers have purchased tubs of Defendant's Low Sodium and EVOO spreads which contain substantially less spread than Plaintiff and consumers have previously received in the identical sized tubs of the Original spread and have effectively paid a premium for the Low Sodium and EVOO alternatives. Plaintiff and the class have been damaged thereby.

21. This action involves questions of law and fact common to the Class. In marketing the tubs of Smart Balance spreads, Defendant has engaged in a systematic course of misrepresenting the products to consumers. Such common issues of law and fact include, but are not limited to:

- Whether the filling of traditional-sized, square tubs of Smart Balance Low Sodium and EVOO spreads with substantially less spread than is contained in the same traditional-sized, square tubs of Smart Balance Original spread was and is likely to mislead consumers;

- Whether Defendant represented that the tubs of Smart Balance Low Sodium and EVOO spreads were of a particular standard or quality or net weight when they were not;

- Whether, as a result of Defendant's misconduct, the Class is entitled to equitable and injunctive relief;

- Whether the Class members obtained the benefit of their bargain in purchasing tubs of Smart Balance Low Sodium and EVOO spreads;

- Whether, as a result of Defendant's misconduct, the Class is entitled to damages.

22. The questions of law and fact common to the members of the Class predominate over any questions affecting only individual members, including legal and factual issues relating to liability and available remedies.

23. Plaintiff's claims are typical of the claims of members of the Class, and Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff purchased Smart Balance Low Sodium and EVOO spreads and suffered an injury-in-fact as a result of Defendant's conduct, as did all Class members who purchased any tubs of Smart Balance Low Sodium and EVOO spreads products containing the reduced net weight of buttery spread. Plaintiff's interests are coincident with and not antagonistic to those of the other members of the Class. Plaintiff is represented by counsel who is competent and experienced in the prosecution of consumer class action litigation.

## FIRST CAUSE OF ACTION
### (Violation of New York General Business Law Section 349)

24. On behalf of herself and the members of the New York Class, as defined above, Plaintiff hereby realleges, and incorporates by reference as though set forth fully herein, the allegations contained above.

25. By reducing the net weight of the Low Sodium and EVOO spreads contained in Smart Balance's traditional-sized, non-transparent, square tubs, Defendant has engaged in an unfair and deceptive business practice that has the capacity, tendency, and effect of deceiving reasonable consumers who purchase its products. Reasonable consumers would believe that the same traditional-sized, square tubs of Smart Balance Low Sodium and EVOO spreads would contain the same quantity (net weight) of buttery spread as the traditional-sized, square tubs of Original spread that they have purchased for years.

26. Defendant knew, or should have known, that by under filling its distinctive, traditional-sized, square tubs of Low Sodium and EVOO spreads with substantially less quantity (net weight) of spread, consumers would be misled into purchasing a

substantially lesser quantity of spreads and would unknowingly pay a premium in connection with their purchase.

27. Plaintiff and the Class have been aggrieved and have suffered losses as a result of Defendant's violations of Section 349 of the New York General Business Law. By virtue of the foregoing unfair, unconscionable, and deceptive acts in the conduct of trade or commerce, Plaintiff and the members of the Class have been substantially injured in the amount of the purchase prices for the Smart Balance Low Sodium and EVOO spreads that they paid, or, in the alternative, have been damaged by paying more for the Smart Balance Low Sodium and EVOO spreads that they purchased.

28. Defendant continues to violate Section 349 of the New York General Business Law, and continues to aggrieve the members of the Class.

29. By reason of the foregoing, Defendant's conduct, as alleged herein, constitutes deceptive acts and practices in violation of Section 349 of the New York General Business Law, and Defendant is liable to Plaintiff and the Class for the actual and/or statutory damages that they have suffered as a result of Defendant's actions, the amount of such damages to be determined at trial, plus treble damages, and attorneys' fees and costs. Plaintiff further demands injunctive relief enjoining Defendant from continuing to engage in, use, or employ any act, including advertisements, packaging, or other representations, prohibited by Section 349 of the New York General Business Law.

## SECOND CAUSE OF ACTION
### (Violation of New York's General Business Law Section 350)

30.     On behalf of herself and the members of the New York Class, as defined above, Plaintiff hereby realleges, and incorporates by reference as though set forth fully herein, the allegations contained above.

31.     New York's General Business Law Section 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service."

32.     Section 350 defines "false advertising" as "advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect."  The section also provides that advertising can be false by omission, as it further defines "false advertising" to include "advertising [that] fails to reveal facts material in the light of such representations with respect to the commodity…to which the advertising relates."

33.     Defendant's packaging, labeling, marketing, and advertising of Smart Balance Low Sodium and EVOO spreads are "misleading in a material respect," and thus constitute "false advertising," because by packaging the Low Sodium and EVOO spreads in the same dimension, distinctive, non-transparent, square tubs as its traditional Smart Balance Original spread, but filling those tubs of Low Sodium and EVOO spreads with only 13 ounces (net weight) of spreads as compared to filling those same dimension tubs with 15 ounces (net weight) of spreads, as it does with its original Smart Balance products, Defendant falsely represents the quantity of Low Sodium and EVOO spreads that are contained in the tubs.

12

34. Defendant continues to violate Section 350 of the New York General Business Law, and continues to aggrieve the members of the Class.

35. By reason of the foregoing, Defendant's conduct, as alleged herein, constitutes false advertising in violation of Section 350 of the New York General Business Law, and Defendant is liable to Plaintiff and the Class for the actual damages that they have suffered as a result of Defendant's actions, the amount of such damages to be determined at trial, statutory damages, plus treble damages, and attorneys' fees and costs.

36. Plaintiff further demands injunctive relief enjoining Defendant from continuing to engage in, use, or employ any act, including advertisements, packaging, or other representations, prohibited by Section 350 of the New York General Business Law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment against Defendant as follows:

A. Certifying this action as a class action as soon as practicable, with the class as defined above, designating Plaintiff as the named class representative, and designating the undersigned as Class Counsel.

B. On Plaintiff's First Cause of Action, awarding against Defendant the damages that Plaintiff and the other members of the Class have suffered as a result of Defendant's actions, the amount of such damages to be determined at trial, plus treble damages.

C. On Plaintiff's Second Cause of Action, awarding against Defendant the

damages that Plaintiff and the other members of the Class have suffered as a result of Defendant's actions, the amount of such damages to be determined at trial, plus treble damages.

D. Awarding Plaintiff and the Class interest, costs, and attorneys' fees.

E. Enjoining Defendant from continuing to engage in, use, or employ any act, including advertisements, packaging, or other representations, prohibited by Sections 349 and 350 of the New York General Business Law.

F. Awarding Plaintiff and the Class such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Federal Rule of Civil Procedure Rule 38, Plaintiff hereby demands a trial by jury on all issues so triable.

Dated:   White Plains, New York
         August 17, 2016

> Respectfully Submitted,
>
> /s/ Jeffrey I. Carton
> DENLEA & CARTON LLP
> Jeffrey I. Carton, Esq. (JC-8296)
> Robert J. Berg, Esq. (RB-8542)
> Myles K. Bartley (MB-8431)
> 2 Westchester Park Drive, Suite 410
> White Plains, New York 10604
> Telephone: (914) 331-0100
> Facsimile: (914) 331-0105
> jcarton@denleacarton.com
> rberg@denleacarton.com
> mbartley@denleacarton.com